# United States Court of Appeals
## *for the*
# Eleventh Circuit

---

### CASE NO.: 16-16314-BB

---

CHRISTINA FELTS,

                                         Plaintiff — Appellant,

vs.

WELLS FARGO BANK, N.A.,
a national association,

                                         Defendant — Appellee.

---

On Appeal from a Final Order of the
United States District Court for the Middle District of Florida
D.C. Docket No.: 8:14-cv-02528-JDW-AEP

---

### APPELLANT'S REPLY BRIEF

---

Ian R. Leavengood, Esq., FBN 10167
Aaron M. Swift, Esq., FBN 93088
Leavengood, Dauval, Boyle & Meyer, P.A.
Northeast Professional Center
3900 First Street North, Suite #100
St. Petersburg, FL 33703
P: (727) 327-3328
F: (727) 327-3305
Attorneys for Appellant


**Dated: February 7, 2017**

---

# CERTIFICATE OF INTERESTED
## <u>PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

The Plaintiff / Appellant, Christina Felts, identifies the following persons and entities as having an interest in the proceedings, pursuant to 11th Cir. R. 26.1-1(b):

Berkshire Hathaway, Inc., Interested entity owns 10% or more of Wells Fargo Bank, N.A. stock, NYSE Ticker Symbol: BRK-A

Felts, Christina, Plaintiff / Appellant

Greenberg Traurig, P.A., Attorneys for Defendant / Appellee

LeavenLaw, Attorneys for Plaintiff / Appellant

Leavengood, Ian R., Esq., Attorney for Plaintiff / Appellant

Mello, Kimberly S., Esq., Attorney for Defendant / Appellee

Reck, Linda M., Esq., Attorney for Defendant / Appellee

Stocker, Michele L., Esq., Attorney for Defendant / Appellee

Swift, Aaron M., Esq., Attorney for Plaintiff / Appellant

Wells Fargo Bank, N.A., Defendant / Appellee
NYSE Ticker Symbol: WFC

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................... C-1

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................. ii

ARGUMENT AND CITATION OF AUTHORITY ........................................ 1

I.      INTRODUCTION ................................................................. 1

II.     WELLS FARGO INACCURATELY REPORTED FELTS'S ACCOUNT AS PAST DUE AND INCREASINGLY-DELINQUENT DURING THE FORBEARANCE PLAN. ................................................ 3

    A. The Trial Court Erred In Determining, As A Matter Of Law, That Wells Fargo Was Only Required To Credit Report Per The Terms Of Felts's Original Loan. ................................................. 3

    B. CDIA and Fannie Mae Guidelines, Which Wells Fargo was Required to Follow with Respect to Felts's Loan, Further Illustrate the Inaccuracy of Wells Fargo's Forbearance Plan Payment Credit Reporting. ......................................................... 9

III.    WELLS FARGO'S CREDIT REPORTING OF FELTS'S LOAN DURING THE FORBEARANCE PLAN WAS MATERIALLY MISLEADING ................................................................ 11

    A. The Trial Court Incorrectly Limited Its Analysis to *Only* Whether Felts Presented Evidence of Materially Misleading *Omissions* ........ 12

    B. Genuine Issues of Material Fact Exist Related to Wells Fargo's Materially-Misleading Omissions From Felts's Credit Reports. ....... 15

    C. Factual Questions Regarding Wells Fargo's Materially-Misleading Credit Reporting Should be Left for the Jury as the Finder of Fact.. 17

CONCLUSION ......................................................................... 18

CERTIFICATE OF COMPLIANCE ...................................................... 18

CERTIFICATE OF SERVICE .......................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. Carrington Mortg. Services LLC*,
2013 WL 495358, *3 (N.D. Cal., Feb. 7, 2013) ..................................................... 14

*Bradshaw v. BAC Home Loans Servicing, LP*,
816 F. Supp. 2d 1066, 1072 (D. Oregon 2011) ............................................... 6, 7, 8

*Bush v. Roundpoint Mortgage Servicing Corp.*,
122 F. Supp. 3d at 1350 (M.D. Fla. 2015) ....................................................... 14, 17

*Dalton v. Capital Associated Indus., Inc.*,
257 F.3d 409, 415 (4th Cir. 2001) .......................................................................... 14

*Darrin v. Bank of America, N.A.*,
2013 WL 877087, at *4 (E.D. Cal. Mar. 7, 2013),
*on reconsideration in part,* 2014 WL 1922819 (E.D. Cal. May 14, 2014) .......... 6, 7

*Davenport v. Sallie Mae, Inc.*,
124 F. Supp. 3d 574, 581 (D. Md. 2015) *aff'd,*
623 Fed. Appx. 94 (4th Cir. 2015) ............................................................................ 8

*Dougherty v. Quicksius, LLC*,
2016 WL 3757056, *2 (E.D. Pa. July 14, 2016) ..................................................... 15

*Freedom v. Citifinancial, LLC*,
2016 WL 4060510, *6 (N.D. Ill. July 25, 2016) ..................................................... 14

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147, 1163 (9th Cir. 2009) ...................................................................... 14

*Kilpakis v. JPMorgan Chase et al*,
2017 WL 112518 (E.D. NY January 10, 2017) ................................................. 13, 14

*Koropoulos v. Credit Bureau, Inc.*,
734 F.2d 37, 40 (D.C. Cir. 1984) ........................................................................... 12

*Nissou-Rabban v. Capital One Bank (USA), N.A.*,
2016 WL 4508241, at *3 (S.D. Cal. June 6, 2016) ................................................. 15

*Saunders v. BB&T*,
526 F.3d 142, 148 (4th Cir. 2008) ........................................................... 13

*Seamans v. Temple Univ.*,
744 F.3d 853, 865 (3d Cir. 2014) ........................................................ 14, 17

*Sepulvado v. CSC Credit Services, Inc.*,
158 F.3d 890, 895 (5th Cir. 1998) ........................................................... 14

*Sutherland v. Urban P'ship Bank*,
2012 WL 567787, at *4 (N.D. Ill. Feb. 21, 2012) ................................... 17

*Taylor v. Screening Reports, Inc.*,
2015 WL 4052824, at *3 (N.D. Ill. July 2, 2015) ................................... 14

*Twomey v. Ocwen Loan Servicing, LLC*,
2016 WL 4429895, **3-4 (N.D. Ill. August 22, 2016) ........................... 14

*Valentine v. First Advantage SafeRent, Inc.* (*Valentine II*),
2009 WL 4349694, *8 (C.D. Cal. Nov. 23, 2009) ................................... 18

**Statutes**

15 United States Code, Section 1681, *et seq.* .................................... passim

15 United States Code, Section 1682s-2(b) ........................................ 2, 8

**Other Authorities**

Black's Law Online Legal Dictionary, 2nd ed. ........................................ 5

**Rules**

11th Cir. R. 26.1-1(b) ........................................................................... 1

Fed.R.App.P. 32(a)(5) ........................................................................... 18

Fed.R.App.P. 32(a)(6) ........................................................................... 18

Fed.R.App.P. 32(a)(7)(B)(iii) ............................................................... 18

Fed.R.App.P. 32(a)7)(B) ....................................................................... 18

## ARGUMENT AND CITATION OF AUTHORITY

### I.    INTRODUCTION

Words matter.    When a billion-dollar financial institution tells a laid-off consumer that it has a mortgage forbearance program that will protect her from "foreclosure *or anything*," that matters.    When that same institution requires the consumer to make agreed-to, reduced mortgage payments and states that an accrued amount "*will become due* after the 'Plan' is completed," those words matter.    Simply put, if a required, reduced payment is made on time, then such payment is objectively not late.    Further, if an accrued amount only *becomes due after* a forbearance plan is completed, then such accrued amount is objectively not delinquent during the forbearance period.    Wells Fargo's credit reporting contradicted its own words, violated the FCRA, and destroyed Felts's credit worthiness.    That matters.

As detailed in her Initial Brief, Felts respectfully asserts that the Trial Court erred in determining, as a matter of law on the threshold issue under the FCRA, that Wells Fargo accurately reported Felts's Loan as past due and increasingly-delinquent while Felts timely paid reduced, required, and agreed-to mortgage payments pursuant to Wells Fargo's Forbearance Plan.    In its Answer Brief, Wells Fargo argues that it correctly credit-reported Felts's Loan because "Felts only made partial payments towards the amount due and owing on her loan" during the Forbearance Plan.    Answer Brief - pg. 17.    Wells Fargo further asserts that the "District Court did not improperly

1

disregard the terms of the Unemployment Program.  Instead, the District Court found that its terms did not excuse the amounts owed under the Loan making the reporting of her partial payments accurate."  *Id.* at ppg. 17-18.  This argument is misplaced, however, because Felts does not argue—and has never argued—that the Forbearance Plan excused or forgave any amounts owed under the Loan, but rather postponed *when* said amounts were owed.  To that end, Felts paid each required, agreed-to, reduced payment during the Forbearance Plan; thus, it is objectively false to report that Felts failed to make *required* payments for 180+ days and that she was ever past due in an increasing amount that ultimately exceeded $20,000.00.

In the alternative, Felts respectfully asserts that the Trial Court erred in determining, as a matter of law, that Wells Fargo's reporting did not create a materially misleading impression as to Felts's credit worthiness.  In its Answer Brief, Wells Fargo asserts that "there simply were no statements or omissions that were materially misleading."  *Id.* at pg. 19.  On the contrary, as discussed in Felts's Initial Brief and below, Wells Fargo's credit-reporting of Felts's Loan contained materially-misleading affirmative statements—and excluded materially-misleading omissions—which created adverse effects on Felts's credit worthiness.  As such, Felts respectfully requests that this Court reverse and remand the Trial Court's granting of summary judgment for Wells Fargo as to Count XVI—i.e., Wells Fargo's violations of the FCRA, Section 1682s-2(b).

2

## II.    WELLS FARGO INACCURATELY REPORTED FELTS'S ACCOUNT AS PAST DUE AND INCREASINGLY-DELINQUENT DURING THE FORBEARANCE PLAN.

Viewing all facts and reasonable inferences in the light most favorable to Felts, the Trial Court erred in holding that Wells Fargo accurately reported and verified that Felts's Loan was past due and increasingly-delinquent—during the Forbearance Plan—in response to Felts's FCRA disputes.    The Trial Court incorrectly found that Wells Fargo appropriately credit reported Felts's Loan only per the terms of her original Loan.  Felts's position is supported by the express terms of the Forbearance Plan as well as analogous caselaw on point.  Moreover, Fannie Mae and CDIA-industry credit reporting guidelines—guidelines drafted to exact the remedial purpose of the FCRA to assure maximum possible accuracy—further support Felts's factual contention that Wells Fargo incorrectly reported Felts's Loan as past due and increasingly-delinquent during the Forbearance Plan.

### A.    The Trial Court Erred In Determining, As A Matter Of Law, That Wells Fargo Was Only Required To Credit Report Per The Terms Of Felts's Original Loan.

The Trial Court erred in holding that "Wells Fargo accurately reported and verified that [Felts's] account was past due and delinquent." Doc 135 - pg 12. The Trial Court's holding is based upon an incorrect assessment of the facts. Specifically, the Trial Court noted that, under the terms of Felts's original Note, Felts was required to make monthly payments to Wells Fargo in the amount of $2,197.38

for the 30-year life of the Loan. *Id.* The Trial Court then made a critical error by finding that "[a]s a factual matter, it is undisputed that [Felts] did not make the required payments beginning in July 2012." *Id.* In its Answer Brief, Wells Fargo echoes this error and argues that its credit-reporting was correct because "[i]nstead, Ms. Felts only made partial payments as required by the terms of the Unemployment Program." Answer Brief - pg. 23. Felts does not, in fact, dispute that she did not make the full payments under the terms of the original Loan during the Forbearance Plan. Rather, both the Trial Court and Wells Fargo conflate what Felts was *required* to pay during the Forbearance Plan. Once Felts and Wells Fargo entered an agreement and forbearance plan that *required* reduced payments, it is axiomatic that her reduced payment is the required payment amount during the life of the Forbearance Plan, rather than the monthly amount due under the original Loan.

The undisputed record evidence shows that Wells Fargo instructed and affirmatively required Felts to pay $0.00 for July and August 2012, and $25.00 for six months beginning September 2012. Doc 113-1 – pg 176; Doc 91-1 – pg 3; Doc 119-3 – pg 1. As Felts timely made all payments exactly as required by the terms of the Forbearance Plan, it is simply not correct that "Wells Fargo accurately reported and verified that her account was past due and delinquent" during the Forbearance Plan. Doc 135 - pg. 12.

4

The Forbearance Plan expressly states that "the total *accrued* amount *then becomes due* and is your responsibility to pay *after you complete the Plan*, or when you become fully employed." Doc 119-3 - pg 2 (emphasis added). Therefore, under the express terms of Wells Fargo's Forbearance Plan, the difference between the original Loan payment and the temporary Forbearance Plan payment would *accrue*, but would not "become due" until *after* Felts completed the Forbearance Plan. In its Answer Brief, Wells Fargo asserts that this language "merely confirms that her 'partial payments' do not satisfy the amount **owed** under the Loan and that the 'accrued' amount will become due and payable after the 'Plan' is completed." Answer Brief - pg. 25 (emphasis in original). Felts, in fact, agrees. Her partial payments did not satisfy the original amount owed under the Loan; rather, Felts's partial payments unequivocally satisfied the required, reduced payments owed under the Forbearance Plan. Further, by its own words in its Answer Brief, Wells Fargo effectively acknowledges that Felts was not delinquent during the Forbearance Plan, because if the "accrued amount will become due and payable after the Plan is completed," then Felts objectively did not owe an increasing, past-due delinquent balance *during* the Forbearance Plan. *Id.* Indeed, Black's Law Dictionary defines "delinquency" as "not paying a debt as agreed." Black's Law Online Legal Dictionary, 2nd ed. Delinquency, therefore, is not simply failing to pay a debt as *originally* agreed; rather, it is literally "not paying a debt as agreed." Here, Wells

5

Fargo and Felts indisputably agreed that Felts was only required to make reduced payments during the Forbearance Plan. As such, it was factually inaccurate for Wells Fargo to report Felts as past due with increasingly-delinquent accrued amounts during the pendency of the Forbearance Plan period.

In its Answer Brief, Wells Fargo states that "none of the decisions cited by Ms. Felts support her argument that the reporting was inaccurate." Answer Brief - pg. 26. This assertion is false, and Wells Fargo glosses over the direct analogy between the facts of this case and *Darrin v. Bank of America, N.A.*, 2013 WL 877087, at *4 (E.D. Cal. Mar. 7, 2013), *on reconsideration in part,* 2014 WL 1922819 (E.D. Cal. May 14, 2014) and *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1072 (D. Oregon 2011). It is true that both *Darrin* and *Bradshaw* "involve the reporting of loans during and after a loan modification process and the reductions in the monthly amounts owed as a result of that process." Answer Brief - pg. 26. Quite simply, however, the Forbearance Plan specifically contemplates a loan modification at the completion of the Plan, and the agreed-to partial payments are reductions in the monthly amount owed as a result of that process. *See* Doc 116-2 [the Forbearance Plan confirmation letter] (stating that "after you complete the Plan…you can apply for payment assistance through a loan modification."). In other words, *Darrin* and *Bradshaw* are nearly directly on point because Felts timely made all required, reduced monthly payments contemplated

during the Parties' materially-undertaken loss mitigation efforts (i.e., the Forbearance Plan), which contemplated a loan modification at completion of the Plan.

In *Darrin v. Bank of America*, the court held that the plaintiff had stated a claim for violation of the FCRA where the bank refused to correct its reporting of six monthly payments as delinquent, even though plaintiff timely made reduced trial period payments as directed by the bank's written and oral instructions during the pendency of a loan modification process. 2013 WL 877087, at *4. Similarly, here, it is unreasonable for Wells Fargo to argue that Felts's payments were untimely or incomplete as Felts followed the exact instructions Wells Fargo's letters and representatives provided her with respect to her performance under the Forbearance Plan.

Likewise in *Bradshaw v. BAC Home Loans Servicing, LP*, the plaintiffs timely made lowered monthly payments as the bank instructed by letter and phone during the pendency of the plaintiffs' loan modification process. 816 F. Supp. 2d at 1072. The *Bradshaw* court explained that plaintiffs made several factual disputes concerning the account, i.e. that plaintiffs always made payments on time in compliance with the bank's instructions, in stark contrast to the late payments, monthly payment amount, and amount past due shown on the credit reports. *Id.* The court explained, "[i]f a credit report is intended to reflect a consumer's likelihood of

default on his or her debts, then information showing that plaintiffs were more than 120 days late in paying their mortgage even though they made a timely payment each month is misleading at best." *Id.*

Wells Fargo essentially argues that the Forbearance Plan was simply a foreclosure-prevention plan that did not in any way whatsoever alter or affect Felts's monthly payment obligations.    To the contrary, the Forbearance Plan was fundamentally the first step in a loan modification process as specifically contemplated by Wells Fargo's written words, and the Trial Court erred by finding, as a matter of law, that Wells Fargo appropriately credit-reported Felts's Account only according to the terms of the original Loan.  If Felts's credit report is intended to reflect her likelihood of defaulting on her debts, then information showing that she was 180+ days late and past due in an increasing amount exceeding $20,000.00—even though she timely made every payment as expressly required Wells Fargo's Forbearance Plan—is inaccurate and misleading.[1]  Therefore, this Court should reverse and remand accordingly.

---

[1] Wells Fargo additionally argues that *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md. 2015) *aff'd,* 623 Fed. Appx. 94 (4th Cir. 2015) is inapplicable because *Davenport* focuses on the reasonableness of the Defendant's procedures. *See* Answer Brief at pg. 27, fn. 7.  This argument is unavailing, however, because implicit in the *Davenport* opinion is the fact that the plaintiff satisfied the threshold element of inaccuracy to then dispute the reasonableness of the defendant's procedures.    In other words, the *Davenport* court only considered summary judgment with respect to a reasonable investigation under Section 1681s-2(b) because it first agreed that the plaintiff alleged a credit-reporting inaccuracy related

8

**B.    CDIA and Fannie Mae Guidelines, Which Wells Fargo was Required to Follow with Respect to Felts's Loan, Further Illustrate the Inaccuracy of Wells Fargo's Forbearance Plan Payment Credit Reporting.**

Fannie Mae's Servicing Guide governing Felts's Loan required Wells Fargo to report "full-file" status report for any loans in an unemployment forbearance plan, in accordance with the CDIA's guidelines.  Doc 135 - pg 7.  In addition, the applicable CDIA guidelines required that, for loans in forbearance [such as Felts's Loan], the "Scheduled Monthly Payment Amount" should be reported as the "new" scheduled monthly payment amount, or when no payment is due, show "zero fill." *Id.*  In its Answer Brief, Wells Fargo admits that it "did not follow these precise guidelines," but nonetheless argues that "strict compliance with the CDIA's guidance would not have 'painted a vastly different picture of Ms. Felts's creditworthiness.'"  Answer Brief - pg. 28.  Wells Fargo is incorrect.

Importantly, Felts does not argue that failure to strictly comply with the Fannie Mae and CDIA guidelines constitutes a *per se* violation of the FCRA.  Rather, said guidelines provide a framework to furnishers that fulfills the purpose of the FCRA, i.e., fair and accurate reporting to assure maximum possible accuracy.  Wells Fargo states that its "reporting of Ms. Felts's Loan accomplished the exact same

---

to payments due during a lender forbearance.  Similarly here, Felts argues that Wells Fargo inaccurately reported payments due during the Forbearance Plan, and Wells Fargo failed to conduct reasonable investigations after receiving disputes regarding the same.

purpose as that which the CDIA's guidance intended—notifying credit reporting agencies that the borrower is making a reduced payment per an agreement with the lender." *Id.* Such is not the case, because compliance with the CDIA and Fannie Mae guidelines in this case would most certainly have resulted in a vastly different outlook with respect to Felts's creditworthiness.

Specifically, the guidelines required that Wells Fargo report the "full-file" status of Felts's Loan, which included any special relief measures. The CDIA guidelines, in particular, required that Wells Fargo report the monthly payment due as the new payment due under the Forbearance Plan. Doc 119-2 - pg 175 at ln 20 - pg 176 at ln 4; Doc 119-5. Both the Trial Court and Wells Fargo, however, assert that "there is simply no support for the notion that changing the scheduled monthly payment field would equate to a current, non-delinquent account." Doc 135 - pg. 13; Answer Brief - pg. 28. Felts respectfully disagrees.

Consider if Wells Fargo had reported Felts's required and scheduled monthly payment as $0 for July and August 2012, and then $25.00 for six months beginning September 2012. Logically in turn, Felts could not have been late in paying her scheduled monthly payment during the Forbearance Plan if she paid as agreed and as required. In other words: 1) if Wells Fargo had correctly reported the monthly amounts due during the Forbearance Plan; and 2) if Felts timely paid all amounts as required by the Forbearance Plan (as she did); then 3) Felts could never have been

reported as 1 day late, let alone 180+ days late as incorrectly reported by Wells Fargo.  Moreover: 1) if Wells Fargo had correctly reported the monthly amounts due during the Forbearance Plan; and 2) if Felts timely paid all amounts as required by the Forbearance Plan (as she did); then 3) Felts could never have had any alleged past-due balance during the Forbearance Plan, let alone $20,000.00+ as incorrectly reported by Wells Fargo.  Said amount, as per the Forbearance Plan's express terms, was to *accrue and become Felts's responsibility to pay after* the completion of the Plan.  As such, at a minimum, these are reasonable inferences drawn from facts that must be viewed in the light most favorable to Felts. Thus, genuine issues of material fact exist which should have precluded summary judgment in Wells Fargo's favor.  Felts therefore respectfully requests reversal of the judgment below.

## III.    WELLS FARGO'S CREDIT REPORTING OF FELTS'S LOAN DURING THE FORBEARANCE PLAN WAS MATERIALLY MISLEADING.

The Trial Court erred in holding that Wells Fargo accurately reported Felts's Loan as late, past due, and increasingly-delinquent during the Forbearance Plan.  In the alternative, the Trial Court also incorrectly determined, as a matter of law, that Wells Fargo's credit-reporting did not create a materially misleading impression as to Felts's credit worthiness.  The Trial Court committed such reversible by: 1) applying an incorrect legal standard due to limiting its review to *only* whether Felts presented evidence of materially-misleading *omissions*; 2) failing to view all facts

and reasonable inferences in a light most favorable to Felts related to certain materially-misleading omissions that Felts did, in fact, raise; and 3) deciding, as a matter of law, factual questions properly left for the jury.

    **A.**    **The Trial Court Incorrectly Limited Its Analysis to *Only* Whether Felts Presented Evidence of Materially Misleading *Omissions*.**

As noted in Felts's Initial Brief, the Trial Court improperly limited its analysis to only whether Wells Fargo credit-reported Felts's Loan as technically accurate but misleading through *omission*. Doc 135 - pg 14. In fact, the Trial Court entitled its discussion on this issue as "No evidence of materially misleading omission." *Id*. (emphasis added). The Trial Court noted that Felts's "cited authority consistently applies the materially misleading standard in the context of *omissions* from a credit report, rather than material statements." *Id*. (emphasis in original). By doing so, the Trial Court essentially added an illogical and new limitation to the FCRA's materially misleading standard, a standard which ensures that credit reports are actionable if they contain "factually correct information that nonetheless mislead their readers" because they "are neither maximally accurate nor fair to the consumer who is the subject of the reports." *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C. Cir. 1984) (noting that "in introducing the bill which ultimately became the FCRA, Senator Proxmire reviewed the types of inaccuracies that can harm credit consumers. He explicitly addressed 'incomplete information' as a type of inaccuracy distinct from misleading information."); s*ee also Saunders v. BB&T*, 526

F.3d 142, 148 (4th Cir. 2008) (stating the "FCRA requires furnishers to determine whether information that they previously reported to a CRA is 'incomplete or *inaccurate*.' In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render reported information misleading."). The analysis, therefore, is disjunctive, covering both affirmative, materially-misleading assertions (i.e., inaccuracies) as well as materially-misleading omissions (i.e., incompleteness).

As noted in Felts's Initial Brief, an omission is undoubtedly one way credit reporting may create a materially misleading impression; however, there is no authority holding that it is the *only* way to mislead. Importantly, both the Trial Court and Wells Fargo conflate the materially misleading standard with the less-protective, and largely unfollowed, "technically accurate" standard with respect to the threshold accuracy analysis. "The overwhelming weight of authority supports an approach to the accuracy analysis that is less rigid than the technically accurate standard, and only one Circuit [the Sixth Circuit] has clearly adopted the competing 'technically accurate' test' rather than the materially misleading test." *Kilpakis v. JPMorgan Chase et al*, 2017 WL 112518 (E.D. NY January 10, 2017) (internal quotations and citations omitted). Specifically, Wells Fargo argues, and the Trial Court held, that "Plaintiff cites no evidence demonstrating that this report was 'false' as a factual matter" and, thus failed to establish that the report was materially misleading.

Answer Brief - pg. 32; Doc 135 - ppg. 14-15.  First, Felts maintains that Wells Fargo's credit reporting was indeed false as a factual matter.  Second, however, credit reporting that is false as a factual matter is not required under the materially misleading analysis, as "there is no clear basis for finding that technical accuracy in credit reporting, regardless of potentially important contextual information, satisfies the FCRA's requirements. *Kilpakis*, 2017 WL 112518 at *5.  In fact, technically accurate reporting can be "misleading in such as way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890, 895 (5th Cir. 1998).

Indeed, as noted in Felts's Initial Brief, numerous courts have found credit reporting to be materially misleading with respect to misleading statements and information appearing in a credit report. *See e.g., Freedom v. Citifinancial, LLC*, 2016 WL 4060510, *6 (N.D. Ill. July 25, 2016); *Twomey v. Ocwen Loan Servicing, LLC*, 2016 WL 4429895, **3-4 (N.D. Ill. August 22, 2016); *Bush v. Roundpoint Mortgage Servicing Corp.*, 122 F. Supp. 3d at 1350 (M.D. Fla. 2015); *Sepulvado*, 158 F.3d at 896; *Taylor v. Screening Reports, Inc.*, 2015 WL 4052824, at *3 (N.D. Ill. July 2, 2015); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Abdelfattah v. Carrington Mortg. Services LLC*, 2013 WL 495358, *3 (N.D. Cal., Feb. 7, 2013);

14

*Nissou-Rabban v. Capital One Bank (USA), N.A.*, 2016 WL 4508241, at \*3 (S.D. Cal. June 6, 2016); *Dougherty v. Quicksius, LLC*, 2016 WL 3757056, \*2 (E.D. Pa. July 14, 2016).

Likewise, here, affirmative and misleading statements in Felts's credit reports created materially-misleading impressions that falsely and negatively impacted Felts's credit worthiness. Specifically Wells Fargo reported Felts as 30, 60, 90, 120, 150, 180, and 180+ days late with an ever-increasing delinquency amount even though Felts paid *every* payment as required under the original Loan and the Forbearance Plan. *See, e.g.,* Doc 119-2 - pg 108 at ln 25 - pg 109 at ln 20; Doc S-127 (Exs. 28 and 36 to Doc 119-2). Even if it is technically accurate that Felts did not make her full original Loan payments during the Forbearance Plan—which she was not required to do—reporting Felts's Loan as late, past-due, and increasingly-delinquent during the Forbearance Plan misled users of her credit report in such as way and to such an extent that adversely affected credit decisions. As such, this Court should view all facts and reasonable inferences regarding the materially misleading standard in the light most favorable to Felts and reverse the Trial Court's granting of summary judgment as to Count XVI.

## B. Genuine Issues of Material Fact Exist Related to Wells Fargo's Materially-Misleading Omissions From Felts's Credit Reports.

While the Trial Court erred by limiting its review to only whether Felts provided evidence of a materially misleading omission, the Trial court likewise

committed reversible error because Wells Fargo's credit-reporting, in fact, did include materially-misleading omissions which create genuine issues of material fact not proper for summary judgment. Specifically, the Trial Court determined that Wells Fargo's credit reporting of Felts's Loan was not misleading because Wells Fargo "reported on each ACDV that Plaintiff's account was disputed by listing the 'Compliance Condition Code' as 'XB' or 'XC.'" Doc 135 - pg. 15. The Trial Court is correct that Felts does not challenge that aspect of Wells Fargo's reporting (i.e., whether Wells Fargo reported the Loan as disputed). Felts does, however, identify other omissions she asserts as materially misleading. For example, Felts argues that Wells Fargo omitted credit-reporting the "Scheduled Monthly Payment Amount" of the Loan as the new, agreed-to, reduced scheduled monthly payment due under the Forbearance Plan, as required by the CDIA Guidelines and Fannie Mae Servicing Guide. *See* Doc 119-2 - pg 167 at ln 18; pg 171 at lns 1-8; pg 175 at ln 20 - pg 176 at ln 4; Doc 119-5. Doc 119-4; Doc 123 - pgs 5-6, 12-13, 24; Doc 124 - pgs 6-7, fn 3, 15-16. In its Answer Brief, Wells Fargo argues that this is an improper and belated argument not ripe for appeal. Answer Brief – pg. 33. Such an averment is insincere as Felts specifically cites to deposition excerpts referenced below as well as portions of her Cross-Motion for Summary Judgment [Doc 123] and her opposition to Wells Fargo's Motion for Summary Judgment [Doc 124] in support of the same.

In conclusory fashion in footnote 12 of its Answer Brief, Wells Fargo argues that *Bush v. Roundpoint Mortgage Servicing Corp.* and *Sutherland v. Urban P'ship Bank*, 2012 WL 567787, at *4 (N.D. Ill. Feb. 21, 2012) have no application to this case. Answer Brief - pgs. 33-34. Wells Fargo is incorrect. *Bush* and *Sutherland* both highlight the importance of not elevating form over substance when applying the materially misleading standard to the threshold inquiry, because technically accurate information can nonetheless materially mislead a user of the information, and thus be actionable under the FCRA. Here, Wells Fargo's argument below elevates form over substance in that Wells Fargo's credit-reporting was actually incomplete, omitting *and* including misleading information regarding what Felts owed on the Loan during the Forbearance Plan. Therefore, the evidence is such that a reasonably jury could determine that Wells Fargo's reporting was materially misleading. Accordingly, the Trial Court's Order should be reversed.

## C. Factual Questions Regarding Wells Fargo's Materially-Misleading Credit Reporting Should be Left for the Jury as the Finder of Fact.

Lastly, the Trial Court erred in holding that Wells Fargo's credit reporting was not materially misleading as a matter of law, because as noted in Felts's Initial Brief, the question of whether information is "materially misleading" is one for the finder of fact. *See Seamans*, 744 F.3d. at 865 (concluding that whether technically accurate information reported under the FCRA is misleading to an extent it can be expected to have an adverse effect is generally a jury question); *Valentine v. First Advantage*

17

*SafeRent, Inc.* (*Valentine II*), 2009 WL 4349694, *8 (C.D. Cal. Nov. 23, 2009) (stating "[w]hether an omission was 'misleading'…and thus an 'inaccuracy,' is generally a question for the jury"). In its Answer Brief, Wells Fargo states that it "does not dispute the law which provides that whether credit reporting is 'materially misleading' if often a question for the jury," (Answer Brief - pg. 35) and the Trial Court noted the same in in its Order. Doc 135 - pg 14. Given the genuine issues of material fact described above related to Wells Fargo's materially misleading reporting of Felts's Loan during the Forbearance Plan, this Court should reverse and remand for further proceedings.

## CONCLUSION

For these reasons, viewing all facts and reasonable inferences in a light most favorable to Plaintiff-Appellant Christina Felts, she respectfully requests that the judgment of the Trial Court be reversed and remanded, as a reasonably jury could return a verdict in Felts's favor.

## CERTIFICATE OF COMPLIANCE

I HERBY CERTIFY that this brief complies with the type-volume limitation of Fed.R.App.P. 32(a)7)(B) because this Reply brief contains 4,396 words, excluding the parts of the Reply brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

This Reply brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief

has been prepared in a proportionally spaced typeface using Times New Roman, 14-point font.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7, 2017, I filed a true and correct copy of the above and foregoing *Reply Brief* electronically with the Clerk of Court via CM/ECF.

I HEREBY CERTIFY that on this date, the above and foregoing *Reply Brief* was electronically served on all counsel of record via transmission of a Notice of Electronic Filing generated by the Clerk of Court via CM/ECF.

I HEREBY CERTIFY that on this date an executed original and seven (7) copies of the above and foregoing *Reply Brief* were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for delivery to:

John Ley, Clerk of Court
United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

/s/ _____
*Attorney*